# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | | |
|---|---|---|
| LORRAINE LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-886-JFA-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| UNITED STATES POST OFFICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Lorraine Little ("Little") filed this action on April 26, 2009. She alleges that she was discharged from her position as a rural mail carrier in retaliation for engaging in EEO activity and that she was subjected to a hostile work environment because of her EEO activity. Defendant filed a motion for summary judgment on March 23, 2010. Little filed an opposition memorandum on April 8, 2010. Defendant filed a reply on April 22, 2010. Pretrial matters in this case were automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(g).

## Standard for Summary Judgment

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> <u>fact</u>.'" *Id.* (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

In this case, Defendant "bear( ) the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and <u>Doyle v. Sentry Inc.</u>, 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. <u>Baber</u>, citing <u>Celotex Corp.</u>, *supra*. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corporation</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin</u>

v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The facts, either undisputed, or according to the plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Little began working for the United States Postal Service ("USPS") in 1999 and became a rural carrier in 2001.

2. At all relevant times Little worked at the Eastover Post Office, which had three other rural carriers, Greg Barber ("Barber"), Kanzora Robinson ("Robinson"), and Gilbert Morphis ("Morphis"), a window clerk, John Ball ("Ball"), and a Postmaster, Venusa Gantt ("Gantt").

3. In 2006 Robinson asked Little to give a statement with respect to an EEO claim she had filed. Gantt was aware of the request. (Little Aff., ¶¶ 4-5 and Pl.Mem., Ex. 5).

4. On March 22, 2006, Gantt issued Little a letter notifying her that she would be removed from the USPS in thirty days for "placing deliverable and accountable mail in the UBBM." Little utilized the grievance system contained in the Collective Bargaining Agreement ("CBA") between the USPS and the National Rural Letter Carriers' Association ("NRLCA"). On August 22, 2006, the NRLCA was notified that Little's grievance had been resolved at Step 3 of the process. The removal was modified "to a time served suspension (no back pay.)" (Pl.Mem., Exs. 6-9).

5. In October of 2006 another removal letter was issued, but it appears no action was taken. (Pl.Mem., Ex. 10).

6.    Gantt issued Little another removal letter which reiterated the charges from the October letter and added a further charge. Little was charged with "unsatisfactory work performance/failure to report an accident," "unsatisfactory work performance/misdelivery," and "unsatisfactory work performance/failure to follow instructions." Little filed a grievance and the matter was settled at Step 2 of the process. The notice of removal was rescinded and expunged from Little's file. She was returned to work with no back pay. (Pl.Mem., Exs. 11-13).

7.    In mid-August of 2007, a postal customer on Little's route, Valencia Felks ("Felks"), made a complaint concerning non-receipt of her mail. This complaint triggered a series of removal letters, visits by Little and others to Felks' residence, accusations of fabrication of violation of postal policy, grievances, EEO complaints, contested matters before the South Carolina Employment Security Commission, a defamation suit brought by Little against Felks, and Little's termination, which is the subject of this action. There are numerous factual disputes concerning the details of these events. Procedurally, the events are summarized as follows:[1]

   a)    Felks initially complained that her mail was being mis-delivered on August 15, 2007.

   b)    On September 9, 2007, Felks wrote a letter to the Eastover Post Office asking that Little be stopped from harassing her. (Pl.Mem., Ex. 22).

---

[1]This summary is largely taken from the hearing held by an Administrative Law Judge ("ALJ") for the EEOC on May 1, 2009. (Def.Mem., Ex. 5, pp. 6-10).

c)  Gantt held a pre-disciplinary investigation ("PDI") (Pl.Mem., Ex. 19 and Def.Mem., Ex. 12), and issued a removal letter.

d)  On September 19, 2007, Gantt suspended Little for 14 days.

e)  Little went out on sick leave on September 24, 2007. The USPS required a physician's statement that Little was able to return to work.

f)  Little was issued a removal letter on October 26, 2007. (Pl.Mem., Ex. 20).

g)  Little returned to work on November 20, 2007.

h)  The removal became effective on November 24, 2007.

i)  Shortly after this removal, Little filed an application for unemployment benefits with the South Carolina Employment Security Commission ("SCESC"). On December 31, 2007, Little requested a subpoena for Felks to testify at the SCESC hearing. (Pl.Mem., Ex. 24).[2]

j)  Little also contacted the EEOC in December of 2007 and complained of sex discrimination and retaliation from August 28, 2007 through October 27, 2007. (Pl.Mem., Ex. 21).

---

[2]Felks testified at the hearing. The issue before the SCESC was whether Little was terminated without cause. An initial determination, mailed December 13, 2007, was that Little was discharged with cause. Eventually, this decision was reversed by an appeal to the full Commission. It found that Little was "eligible for benefits from April 27, 2008, for having been separated under nondisqualifying circumstances." (Pl.Mem., Ex. 31). Apparently, the issues before the SCESC were expanded to include many of the issues raised in the present complaint.

k)    Little was returned to work without back pay on January 24, 2008, through the grievance process. (Def.Mem., Ex. 16).

l)    Gantt conducted another PDI on February 1, 2008, which resulted in no discipline.

m)    On February 20, 2008, Little filed a *pro se* complaint in the Richland County Court of Common Pleas alleging that Felks had defamed her. (Def.Mem., Ex. 15).[3]

n)    On March 25, 2008, Gantt held another PDI which included Little's filing of the defamation suit against Felks.

o)    Gantt issued Little a removal letter on April 1, 2008, based on three charges: (1) creating a controversy with a customer (i.e., the conflict with Felks culminating in the filing of the defamation action); (2) unsatisfactory work performance in the misdelivery of 21 pieces of mail on March 7, 2008; and (3) compromising the integrity of the rural mail count. (Pl.Mem., Ex. 27; Def.Mem., Ex. 1).

p)    Little filed a grievance pursuant to the CBA, and the NRLCA moved to have the matter arbitrated. The arbitrator held a hearing on November 20, 2009. On March 30, 2009, the arbitrator denied and dismissed the grievance finding that just cause existed for Little's termination. The arbitrator found that there was insufficient evidence to support a finding of cause for the unsatisfactory work performance

---

[3]The record contains no resolution of this matter.

6

for misdelivery of the 21 pieces of mail and for compromising the integrity of the mail count. However, the arbitrator found that there "is just cause for removal for Grievant filing a civil suit against a customer for actions that arose during the performance of her official duties." The arbitrator found that Little's filing of the defamation action was "in direct violation of the ELM [Employee Labor Relations Manuel], Sections 665.16 and 667.16." (Def.Mem., Ex. 2, pp. 16-17).

q) The EEO charge was apparently amended to include the April 1, 2008 removal letter. These matters were included in the hearing on May 1, 2009, and findings of the ALJ. The ALJ found that the filing of the defamation lawsuit by Little against Felks was sufficient reason to terminate Little and found that Little had not established retaliation. (Def.Mem., Ex. 5, p. 12).

r) The EEO office of the USPS affirmed the decision of the ALJ on June 11, 2009. Little was notified that she could appeal to the EEOC in Washington, D.C., or file a civil action in the United States District Court. (Def.Mem., Ex. 7). Apparently, Little chose to file the present action.

## Discussion

### 1. Retaliation

Little alleges that she was terminated by the USPS because she engaged in protected EEO activity. It has been noted that the anti-retaliation provisions for private sector employees and

government employees rely on differently worded statutes. However, it has been held that "[a]lthough phrased differently, [42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-16(a)] have generally been treated as comparable, with standards governing private-sector illegal claims applied to such claims brought by federal employees." Caldwell v. Johnson, 289 Fed.App. 579, 588 (4th Cir. 2008) (unpublished) quoting Baqir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006).

Defendant does not contest that Little may bring a retaliation claim against a federal employer. Further, Defendant concedes that Little can establish a prima facie case of discrimination by showing that: "(1) she engaged in a protected activity; (2) an adverse employment action was taken against her or she suffered some other injury or harm; and (3) there was a causal link between the protected activity and the adverse action/injury. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Burlington N. & Sante Fe Ry.Co. v. White, 548 U.S. 53 (2006). If the employer can then proffer a nonretaliatory reason for its action, she must show that the employer's proffered reason is pretextual. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006)." (Def.Mem., p. 22). Little does not disagree with this standard. (Pl.Mem., pp.14-25).

Defendant also concedes that, based on the record before the Court, Little has established a prima facie case of retaliation. (Def.Mem., p.22). Defendant argues that it had legitimate non-discriminatory reasons for termination of Little: "Plaintiff does not deny that she made multiple visits to the customer's [i.e., Felks'] residence, that she wrote the customer a note, that she had her friends visit the customer, that she called the customer as a witness at the Employment Security Commission hearing and questioned her under oath about her complaint, and that she finally sued the customer in state court." (Def.Mem., p. 23).

Little has vigorously contested the factual basis of the grounds stated in all the letters of removal issued by Gantt. These allegations were generally settled through the grievance process. However, the final grievance which reached arbitration contested three grounds for removal. The arbitrator found insufficient and contradictory evidence on two of the grounds, but found that the USPS had just cause to remove Little based on the defamation suit she filed against Felks. The ALJ likewise found that the only cause for removal proved at the hearing was the defamation action. Thus, the undersigned concludes that there are questions of fact on the issue of pretext on all the grounds for removal argued by Defendant except the filing of the defamation action. The undersigned further concludes that the sole issue which must be determined on Little's retaliation claim is whether USPS was justified in terminating her because she filed the defamation action against Felks.

On this point, Little does not deny that she filed the defamation action against Felks. She argues that the filing of the defamation action was not grounds for her removal because she did not violate USPS policy by doing so. In this regard, Little raises a technical point:

> "Ms. Gantt cited the policy set forth in Rule 667.16 ('Controversy's with the Public') within the dismissal letter. This provision states as follows: 'Employees must not engage in controversies with customers, railway employees, airline employees or other members of the public while on duty or on federal property.'" (Pl.Mem., p. 12).

A copy of this policy (ELM 667.16) is attached to Little's memorandum. (Pl.Mem., Ex. 29).

Little is factually wrong in her argument. Gantt did not cite ELM 667.16 in her removal letter. Instead, Gantt cited and quoted another provision ELM 665.16 ("Behavior and Personal Habits") which states:

> **ELM 665.16 Behavior and Personal Habits.** Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off-duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute. Employees are expected to maintain harmonious working relationships and not to do anything that would contribute to an unpleasant working environment.

(Pl.Mem., Ex. 27).

This provision does not have an on duty or on federal property requirement. The arbitrator found that Little had violated ELM 665.16 and 667.16 in concluding that there was just cause for termination. (Def.Mem., Ex. 2, p. 17). The ALJ concluded that Little's "last termination was based on the Complaintant's lawsuit against the postal customer, which the Complaintant admitted she did." (Def.Mem., Ex. 5, p. 12).

The undersigned concludes that Defendant is entitled to summary judgment on Little's claim of retaliation because she has not shown pretext. Little has not shown that the filing of the defamation action against a postal customer was insufficient grounds for termination.[4]

## 2. Retaliatory Hostile Work Environment

In her second claim, Little alleges that Gantt subjected her to a hostile work environment because she engaged in protected EEO activity, beginning with giving a statement in support of Robinson's claim of discrimination and continuing based on the filing of her (Little's) EEO

---

[4]Little attempted to depose Felks in this case but she did not appear. On January 12, 2010, Little filed a motion to compel Felks' deposition or to exclude her testimony. USPS filed a response on January 29, 2010. It is recommended that this motion be denied.

complaints. Defendant, without addressing the claim on the merits, argues that "(t)he hostile environment claim should be dismissed because it was not raised during the agency's administrative process and so Plaintiff failed to exhaust administrative remedies on that claim." (Def.Mem., p. 24). Little, on the other hand, ignores Defendant's argument that she failed to exhaust the claim, and addresses only the merits of the claim. (Pl.Mem., pp. 30-31).

A federal employee is required to exhaust his administrative remedies on Title VII claims prior to seeking judicial relief in federal court. Brown v. General Services Administration, 425 U.S. 820, 832 (1976). The EEOC has promulgated regulations to insure that government agencies meet the requirements of Title VII exhaustion. *See* 29 CFR § 1614.101, et. seq. These regulations provide a framework for the agency to receive and process claims of discrimination. Complaints alleging retaliation are treated as claims of discrimination (29 CFR § 1614.103(a)). The steps in the administrative process include pre-complaint counseling (29 CFR § 1614.105); the filing of an individual complaint (29 CFR § 1614.106); investigation of the complaint by the agency which results in a determination on the claim (29 CFR § 1614.108); a hearing before an ALJ appointed by the EEOC (29 CFR § 1614.109); and a final action by the agency following the decision of the ALJ (29 CFR § 1614.110).

Review of the record shows that Little filed more than three formal complaints of discrimination with the USPS each of which was assigned a case number:

1.     On March 20, 2007, Little filed an EEO complaint, case number 4K-290-0024-07 ("EEO 1") in which she alleged retaliation based on prior EEO activity (citing case numbers 4K-290-0049-06 and 4K-290-0068-05) because she was given a Notice of Removal on November 20, 2006. Little also filed a grievance on this claim and the

removal was rescinded on December 26, 2006, with no back pay. Mediation was held on the EEO 1, but was unsuccessful. (Pl.Mem., Ex. 13).

2.    On December 21, 2007, Little filed an "EEO Complaint of Discrimination in the Postal Service," case number 4K-290-0125-07. ("EEO 2"). She alleged sex discrimination and retaliation on August 28, September 20, October 9, and October 27 of 2007. (Pl.Mem., Ex. 21). The complaint form does not have a "harassment" box to check, but Little listed several specific incidents of discrimination. In the "remedies" section of the complaint, Little asked for a replacement Postmaster "who is fair, honest, impartial, and follow postal policies or have management do whatever they deem necessary to put an end to this harassment, lying, and false accusations." (*Id.*). An "EEO Investigation Report" completed by an investigator on April 26, 2008, states that Little in her complaint, "alleged discrimination based on sex (female) and retaliation (prior EEO activity) in that from August, 2007 through October, 2007 she was subjected to ongoing harassment." (*Id.*)

3.    On August 2, 2008, Little filed an EEO Complaint of Discrimination in the Postal Service, case number 4K-290-0078-08 ("EEO 3") alleging retaliation on April 1, 2008. She stated that she "was discriminated against and retaliated against for the fifth time when the Postmaster issued me a letter of removal." (Def.Mem., Ex. 4). Little did not specifically mention harassment in this complaint, but she did list the case numbers of her previous EEO activity. EEO 3 clearly applies to the removal letter Gantt gave Little on April 1, 2008, which included a charge relating to the filing of the defamation case against Felks. (Def.Mem., Ex., 1).

Before filing a Title VII complaint in the United States District Court, a plaintiff must first exhaust his administrative remedies. *See* 42 U.S.C. § 2000e-5(b) and <u>Bryant v. Bell Atl. Md. Inc.</u>, 288 F.3d 124, 132 (4th Cir.2002). The exhaustion requirement "serves the complementary goals of providing employers fair notice of alleged discrimination and of enabling the EEOC to pursue a reconciliation between the disaffected employee and his employer." <u>Carter v. Rental Unif. Serv. of Culpeper, Inc.</u>, 977 F.Supp. 753, 758 (W.D.Va.1997). Generally, a federal district court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge. <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156-57 (4th Cir.1995). The court must liberally construe the EEOC charge, because "lawyers do not typically complete the administrative charges." <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 509 (4th Cir.2005). The employee's claims in this court are not strictly limited by the allegations contained in the EEOC charge, and the plaintiff may pursue a claim if it is "reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation." <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 247 (4th Cir.2000).

USPS argues that Little failed to exhaust her retaliatory hostile work environment claim because it was not specifically included in EEO 3 which dealt with dismissal for reasons that included the filing of the defamation action against Felks. The undersigned concludes that Defendant is not entitled to summary judgment on the claim on this basis.

USPS fails to acknowledge that a retaliatory hostile work environment claim was unquestionably raised in EEO 2. A careful review of the record shows that the hearing before the ALJ was actually in "Agency No. 4K-290-0125-07" which was the number assigned to EEO 2. (Def.Mem., Ex. 5). At the hearing, Little objected to the consolidation of EEO 3 with EEO 2. (*Id.*, pp. 6-7). Further, Little testified at the hearing that "(t)he Postmaster constantly harassed me, made

13

up stories on me, kept terminating me. When I'd go back to work, she retaliated, make up more stories. It was just an unending cycle and it all began in pretty much 2006 up until she finally terminated me. They're all based on false charges." (*Id.,* p. 12). Last, Notice of Final Action issued by the USPS EEO office was in EEO 2, not EEO 3. Therefore, the undersigned concludes that Little exhausted her claim of a retaliatory hostile work environment because it was specifically raised in EEO 2 in which she received a right to sue letter.[5]

By failing to address the merits of Little's retaliatory hostile work environment claim, USPS implicitly concedes that the evidence is sufficient to go forward.

## Conclusion

Based on a review of the record, it is recommended that Defendant's motion for summary judgment be **granted** as to Plaintiff's claim of retaliation and be **denied** as to Plaintiff's retaliatory hostile work environment claim. It is also recommended that Plaintiff's motion to compel or exclude the testimony of Felks be **denied.**

_____
Joseph R. McCrorey
United States Magistrate Judge


Columbia, South Carolina

June 29, 2010

---

[5]The record is unclear as to why the ALJ failed to address this claim in his decision.

14